FOR PUBLICATION – PRECEDENTIAL

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | | |
|---|---|---|
| CHARLES ILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GOVERNOR JOHN P. de JONGH, JR., in | ) | CIVIL NO. 2007/0094 |
| his official and individual capacity, and THE | ) | |
| GOVERNMENT OF THE VIRGIN | ) | |
| ISLANDS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | | |
| CLAUDE S. M. GERARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CIVIL NO. 2007/0053 |
| GOVERNOR JOHN P. de JONGH JR., in | ) | CIVIL NO. 2007/0019 |
| his official and individual capacity, and THE | ) | |
| GOVERNMENT OF UNITED STATES | ) | |
| VIRGIN ISLANDS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Finch, Senior Judge

THESE MATTERS come before the Court on the Motions for Preliminary Injunction filed by Plaintiffs Charles Iles and Claude Gerard pursuant to Rule 65(a) of the Federal Rules of Civil Procedure.[1]  Iles and Gerard bring claims under 42 U.S.C. § 1983, alleging *inter alia* that

---

[1] These matters are consolidated only for the purposes of this Memorandum Opinion.

they were terminated in violation of their Fourteenth Amendment rights to due process.[2]
Evidentiary hearings were held on Iles' and Gerard's motions seeking reinstatement with backpay.

**I.     The Evidence Presented Relevant to the Fourteenth Amendment Issue**

Before their discharge, Iles and Gerard were employed by the Government of the Virgin Islands in the Department of Planning and Natural Resources, Division of Coastal Zone Management. A Notice of Personnel Action (NOPA), signed by Governor Charles W. Turnbull on June 15, 2004, transferred Iles from his previous governmental position to that of Permits Coordinator. Iles' new position was listed on the NOPA as "exempt." In June 2004, Iles signed a letter, addressed to the Acting Director, Division of Personnel, which stated:

> In accordance with Act 5336, Section 6(c) and Section 8(a), I am electing to be placed in the EXEMPT SERVICE of the Government of the Virgin Islands by accepting the position of <u>Permits Coordinator, Division of Coastal Zone Management</u> at <u>$43,000.00</u> per annum, in the DEPARTMENT OF PLANNING AND NATURAL RESOURCES.
> This request is voluntary as certified by witness.

Governor Turnbull signed a NOPA transferring Gerard from his previous governmental position to that of Assistant Director of Coastal Zone Management and indicating that his position was also "exempt" on June 28, 2004. Gerard signed a letter to the Acting Director, Division of Personnel which was identical to the one signed by Iles, except that he accepted the position of "<u>Assistant Director, Division of Coastal Zone Management</u> at <u>$50,000.00</u> per annum."

---

[2] The Fourteenth Amendment to the United States Constitution is applicable to the Virgin Islands through the section 3 of Revised Organic Act of 1954, 48 U.S.C. § 1561.

Shortly after taking office, Defendant Governor John de Jongh, Jr. advised Iles that his employment was terminated. In a letter dated February 3, 2007, he wrote:

> Dear Mr. Isles:
>
> You are hereby advised that your services as Permits Coordinator of the Coastal Zone Management in the Department of Planning and Natural Resources will no longer be necessary. Therefore, your employment with the Government of the Virgin Islands is terminated effective February 9, 2007.
>
> On behalf of the people of the Virgin Islands, I would like to thank you for your service. I wish you the best in all your future endeavors.
>
> Cordially,
>
> /s/
> John P. de Jongh, Jr.
> Governor

Governor de Jongh terminated Gerard, effective February 9, 2007, by writing him a letter identical to the one that he had written to Iles, with substitution of the position of "Assistant Director" for that of "Permits Coordinator."

## II. Necessary Showing for Issuance of a Preliminary Injunction

To obtain a preliminary injunction, the moving party must demonstrate "[A] the reasonable probability of eventual success in the litigation and [B] that the movant will be irreparably injured pendent lite if relief is not granted." Bennington Foods LLC v. St. Croix Renaissance, Group, LLP., 528 F.3d 176, 179 (3d Cir. 2008) (quotation omitted). The Court "should take into account, when they are relevant, [C] the possibility of harm to other interested persons from the grant or denial of the injunction, and [D] the public interest." Id. (quotation omitted). "All of these factors often are weighed together in the final decision and the strength of

the plaintiff's showing with respect to one may affect what will suffice with respect to another." Marxe v. Jackson, 833 F.2d 1121, 1128 (3d Cir. 1987).

    A.    Likelihood of Success on the Merits

Whether procedural due process was violated is a two-part inquiry: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted); see Richardson v. Felix, 856 F.2d 505, 507 (3d Cir. 1988) (stating that for employee to show that dismissal violated due process, employee must show "(1) that the dismissal deprived him of a property or liberty interest, and (2) that the employer did not afford him adequate procedural protections in connection with the action").

    1.    Whether Iles and Gerard had a Property Interest

"The question of whether an employee has a property right in continued employment is a question of state [or territorial] law." McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995). An employee that, under state or territorial law, cannot be removed without cause, has a property right in continued employment. Richardson, 856 F.2d at 509.

Employees of the Government of the Virgin Islands are either in the career service or in a position exempted from the career service, also referred to as "the exempt service" or, simply, "exempt." 3 V.I.C. § 451a(a) (1995). The Third Circuit Court of Appeals in Richardson v. Felix, held that Virgin Islands non-probationary, career service employees, referred to as "regular employees" by 3 V.I.C. § 530, have a property interest in continued employment. 856 F.2d at

4

509.

Certain exempt positions are specifically identified in 3 V.I.C. § 451a(b)(1)-(7) (1995). The Governor is also authorized to designate additional positions as exempt with submission to the Legislature.[3] 3 V.I.C. § 451a(b)(8) (Supp. 2009). Such positions must be of a policy-determining nature or require a confidential relationship with a policy-making official. Id.

Neither the position of Permits Coordinator nor that of Assistant Director is identified in 3 V.I.C. § 451a(b)(1)-(7) as exempt. No evidence was presented to show that the Governor had designated either of such positions as exempt and submitted such designation to the Legislature, as otherwise required by 3 V.I.C. § 451a(b)(8). Thus, in light of 3 V.I.C. § 451a(c), which states that "[a]ll positions in the Executive Branch of the United States Virgin Islands Government not exempted under subsection (b) of this section shall be in the career service," it would seem beyond dispute that both Iles and Gerard held career service positions.

Notwithstanding these unambiguous provisions, Defendants Governor de Jongh and the Government of the Virgin Islands contend that Iles and Gerard were exempt. They rely on evidence that they contend shows that Iles and Gerard occupied policy-making positions, the

---

[3] Title 3 V.I.C. § 451a(b)(8) was amended in 2000 to add the following italicized language:

(b) The exempt positions are those of –
. . . .
    (8) an officer or employee in a position of a policy-determining nature *when the position is so designated by the Governor and submitted to the Legislature; and an* employee who is a special assistant, or who is on special assignment to, or whose position requires a confidential relationship with a policy-making official *when the position is so designated by the Governor and submitted to the Legislature.*

3 V.I.C. § 451a(b)(8) (Supp. 2009).

exempt indications of the NOPAs, Iles' and Gerard's election to be placed in the exempt service, and Iles' and Gerard's failure to compete for their appointments.

Defendants cite the Third Circuit's opinion in Martinez-Sanes v. Turnbull, 318 F.3d 483, 487 (3d Cir. 2003) for the proposition that a person who is a policy-maker or is in a confidential relationship to a policy-maker does not have a Fourteenth Amendment property interest in continued employment. However, in reaching this conclusion, the Third Circuit was interpreting an earlier version of 3 V.I.C. § 451a(b)(8), which made part of the exempt service any "officer or employee in a position of a policy-determining nature." This broad provision was limited in 2000 to include only "an officer or employee in a position of a policy-determining nature when the position is so designated by the Governor and submitted to the Legislature." 3 V.I.C. § 451a(b)(8) (Supp. 2009).

Thus, Defendants' reliance on the Third Circuit's reasoning concerning the scope of the Fourteenth Amendment protection is misplaced. Even if Iles' or Gerard's positions were of a policy-determining nature, neither position is exempt because neither position was "so designated by the Governor and submitted to the Legislature."

As to the argument that Iles and Gerard are exempt by virtue of their NOPAs, the statutes take precedence over the provisions of the NOPA. "It is axiomatic that an administrative regulation or practice cannot validly contradict a clear legislative policy." Richardson, 856 F.2d at 511; see also Hassell v. Turnbull, 1999 WL 33722538, at *9 (D.V.I. Dec. 1, 1999) *aff'd in part and rev'd in part on other grounds sub nom.* Martinez-Sanes v. Turnbull, 318 F.3d 483 (3d Cir. 2003) ("[I]t is the definition of "career" and "exempt" in Section 451a of Title 3 of the V.I. Code and not the NOPA which determines whether a position is in the career service or the

exempt service.").

Finally, as this Court previously ruled in Hassell, 1999 WL 33722538, at *9, "the election forms that Plaintiff[s] were required to execute were of no legal effect." Iles and Gerard elected to be placed in the exempt service in accordance with section 6(b) of Act No. 5336, which added to Act 5225 a new section 3(c), retroactive to the enactment date of Act No. 5225, which reads:

> (c) No government employee of the Executive branch who holds a position or classification in the career or classified service, as referred to in Title 3, Section 451a, VIC, and who is employed within a bargaining unit certified by, or which may become certified by, the Public Employees Relations Board, pursuant to Title 24, Chapter 14, VIC, shall be placed into exempt, unclassified or temporary service, unless and until such employee has filed a written request therefore with the Director of Personnel upon form to be provided by the Director. Such form shall set forth a statement that the request is voluntarily undertaken and it shall contain a verification that such statement is voluntarily undertaken as certified by a witness.

1988 V.I. Sess. Laws 124.

The purpose of this provision was to ensure that individuals who held career service positions would not suddenly find themselves in the exempt service as a result of any governmental reorganization, without their voluntary consent. Cf. Furet v. Juan F. Luis Hospital and Medical Center, PERB-GSA-99-28 (May 14, 1999) (holding that such election applied "only to those employee in career service position before the Government's reorganization in 1987 who were made exempt"). Therefore, election to be placed in the exempt service is applicable only when the classification of an employee's position is changed from career service to exempt while the employee continues to occupy that same position.

There is no evidence that either Iles' or Gerard's positions were ever changed to the exempt category during their tenure as Permits Coordinator and Assistant Director, respectively.

Thus, their elections are of no moment.

The Virgin Islands has established a competitive system for selecting employees for the "classified service." See 3 V.I.C. §§ 521-529. The "classified service" is another way of referring to the "career service." See 3 V.I.C. § 451a(d) (defining "career service" and "exempt service" as synonymous with "classified service" and "unclassified service," respectively).

Defendants contend that because neither Iles nor Gerard was selected in accordance with this methodology, they cannot be considered employees in the career service. This argument fails for several reasons.

First, 3 V.I.C. § 451a(c) makes clear that all positions not exempted under 3 V.I.C. § 451a(b) are in the career service. Subsection (b) does not consider exempt those employees that would otherwise be in the career service, but for the fact that they did not compete for their positions. Because such employees' positions are not exempted under subsection (b), they are in the career service.

Defendants contend that because Iles and Gerard were not appointed to the classified service "on the basis of merit and fitness, . . . ascertained by competitive examination," 3 V.I.C. § 521, they never attained classified status and, therefore, was not entitled to due process.[4] The Court has recognized that "a contrary holding would hinder the goal of the . . . Personnel Merit System of the Virgin Islands Code to secure the best qualified public servants and to avoid the practice of filling positions solely on the basis of political patronage." Gibbs v. Turnbull, 2008 WL 2917824, at * 9 n.6 (D.V.I. July 24, 2008). However, notwithstanding the laudable

---

[4] Title 3 V.I.C. § 521 provides, in its entirety: "Except as otherwise specified in this chapter, all appointments and promotions to positions in the classified service shall be made on the basis of merit and fitness, to be ascertained by competitive examination."

8

objectives potentially achieved by reading 3 V.I.C. § 521 as providing its converse – that an employee cannot be considered to be in the classified service if the employee is not appointed in conformance with 3 V.I.C. § 521 – such an interpretation goes to far in the direction of judicial legislation.

Furthermore, the competitive system places the principal responsibility on the Director of Personnel to administer the selection process. <u>See generally</u> 3 V.I.C. §§ 521-529. The statutory framework does not impose any correlative obligations on prospective employees. Therefore, neither Iles nor Gerard can be faulted for failing to take any steps precedent to accepting their positions; there is no evidence that they did not meet all requirements imposed upon them by the Director of Personnel.

Moreover, the Legislature did not intend that the Director of Personnel control who would be placed in the career service and who would be placed in the exempt service. If the Court were to interpret the statutory framework as Defendants suggest, the extreme outcome would be that if the Director of Personnel were to cease administering the competitive system for selecting employees, all employees would be in the exempt service. This absurd result is antithetical to the legislative intent.

Finally, if the question of whether an employee had a property interest in continued employment were to turn on whether there had been compliance with the competitive appointment provisions, 3 V.I.C. §§ 521-529, the federal judiciary would be called upon to scrutinize the day-to-day operations of the executive branch of the Government of the Virgin Islands. In cases such as the one at bar, the Court would have to review the selection process used to hire the employee to assess whether that selection process was sufficient for the employee

to be considered to be in the classified service.  The Court would have to establish a standard of review and interpret the provisions to ascertain the appropriate degree of compliance.

Litigation would proliferate by employees who considered themselves to hold a property interest in their employment and were not afforded due process in relation to an adverse employment action.  The proposition that an employee who is not appointed on "the basis of merit and fitness, . . ascertained by competitive examination," 3 V.I.C. § 521, is not in the classified service, which the Government of the Virgin Islands endorses, would result in unwarranted and frequent intrusions of the federal judiciary in the inner workings of the Government of the Virgin Islands.  Such interaction of the federal judiciary with the Government of the Virgin Islands runs counter to the principles of federalism.

In 3 V.I.C. § 451a, the Legislature has marked the boundaries of the exempt service and the career service.  Because Iles' and Gerard's positions do not fall within the exempt service, they are career service positions.  Whether they were appointed "on the basis of merit and fitness," "ascertained by competitive examinations," 3 V.I.C. § 521, does not bear upon their status.  As regular employees within the career service, Iles and Gerard have a property interest in their continued employment.

### 2. Whether the Terminations Comported with Due Process

The question of what process is due an employee with a property interest in continued employment is a question of federal constitutional law.  McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995).  According to the Supreme Court, prior to termination, an employee with a property interest, at a minimum, "is entitled to oral or written notice of the charges against him,

an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

Iles and Gerard received no oral or written notice of the charges against them. They were not afforded an opportunity to be heard. Thus, the essential requirements of due process were not met.

Defendants contend that Iles and Gerard had administrative remedies available to them under 3 V.I.C. § 530 that would have afforded them due process, but that they failed to take advantage of and exhaust such remedies. Title 3 V.I.C. § 530(a) requires that before an employee is terminated, a written statement of charges be provided. The employee then has ten days to file an appeal.

Because Iles and Gerard were never served with a statement of charges against them, the time for filing an appeal never commenced. The statement of charges is a condition precedent to any measure an employee might take. 3 V.I.C. § 530 (Supp. 2009) (giving the employee "ten days following the date of receipt of the statement of charges to appeal the proposed action"). Because Iles and Gerard were not provided with a statement of charges, they were deprived of this administrative remedy. Moreover, a plaintiff may properly bring a 42 U.S.C. § 1983 suit even without first exhausting administrative remedies. Olmeda v. Schneider, 889 F. Supp. 228, 232 n.5 (D.V.I. 1995) (citing Monroe v. Pape, 365 U.S. 167, 183 (1961)).

In sum, Iles and Gerard held non-probationary career service positions, and, as such, had a property interest in their continued employment. Governor de Jongh's letters, that did not give them notice of the reasons for their discharge and an opportunity to be heard, did not comport with the due process requirements of the Fourteenth Amendment. Thus, there is a strong

11

probability that Governor de Jongh, in violation of 42 U.S.C. § 1983, deprived Iles and Gerard of due process guaranteed to them by the Fourteenth Amendment.

B. <u>Irreparable Injury</u>

"When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Wright, Miller, & Kane, 11A Federal Practice and Procedure § 2948.1 at 161 (1995); <u>see, e.g.</u>, <u>Henry v. Greenville Airport Commission</u>, 284 F.2d 631, 633 (4th Cir. 1960) (holding in Fourteenth Amendment public facility segregation case, that notwithstanding failure to show irreparable harm, "District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right").

"It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" <u>Mills v. District of Columbia</u>, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976) (plurality opinion) (finding that checkpoint program which violated Fourth Amendment freedom caused irreparable harm)); <u>cf.</u> <u>Valley v. Rapides Parish School Bd.</u>, 118 F.3d 1047, 1056 (5th Cir. 1997) (finding deprivation of due process rights, together with injury to reputation and difficulty in procuring comparable employment, sufficient to satisfy irreparable injury).

Iles and Gerard have been deprived their property interest in their continued employment without due process. This constitutional violation constitutes irreparable harm in and of itself. <u>See</u> <u>Jessen v. Village of Lyndon Station</u>, 519 F. Supp. 1183, 1189 (D. Wis. 1981) (holding that loss of constitutional right to pretermination hearing cannot be adequately compensated);

12

Faulkner v. North Carolina Dept. of Corrections, 428 F. Supp. 100, 103-104 (W.D.N.C. 1977) (noting that constitutional "violation continues every day that goes by without the defendants' affording [plaintiff] a hearing," causing irreparable harm).

Furthermore, although they can be monetarily compensated for their salary losses, Iles and Gerard also have been deprived of their job titles, job security, health insurance coverage, and retirement benefits, as well as their reasonable expectations of advancement in their civil service careers. See Keyer v. Civil Service Commission of New York, 397 F. Supp. 1362, 1370 (E.D.N.Y. 1975) (finding irreparable harm because "[e]ventual reinstatement, should [plaintiffs] prevail in this action, will not adequately recompense them for the opportunities of promotion which in the interim pass them by"). "[Job title and dignity] are intangibles not aptly measured or compensable by any monetary amount." Quiles Rodriguez v. Calderon.172 F. Supp.2d 334, 344 (D.P.R. 2001). Thus, Iles and Gerard have shown that they have suffered and are continuing to suffer irreparable injury.

### C. Balance of Hardship

The balance of hardships in the circumstances before this court tip in favor of granting the preliminary injunction. Allowing Iles and Gerard to return to their previously-held positions would not visit any substantial harm on Governor de Jongh or the Government of the Virgin Islands. The far greater harm to Iles and Gerard and the people of the Virgin Islands would be to let the unconstitutional termination stand. Cf. Valley, 118 F.3d at 1056.

To Gerard and Iles, their salary represents their livelihood and unemployment will continue to cause them undue hardship. Accord Roig v. Puerto Rico National Guard, 47 F.

Supp.2d 216, 222 (D.P.R. 1999). Requiring Governor de Jongh to reinstate Gerard and Iles until he provides them with notice and an opportunity to be heard represents a minimum burden on the Governor's shoulders. The harm to Iles and Gerard from their unfair termination outweighs any harm that Governor de Jongh or the Government of the Virgin Islands might suffer.

Moreover, if Iles and Gerard were to ultimately prevail in this case, which is likely, their damages would be greatly increased if they are not promptly restored to their government employment. Maintaining the present status quo would be detrimental to all parties. See Teamsters Public Emp. Union Local No. 594 v. City of West Point, Neb., 338 F. Supp. 927, 930 (D. Neb. 1972).

    D.    Protection of the Public Interest

The public interest would not be undermined by the issuance of a preliminary injunction. The Legislature, in clear and unassailable terms, has specified which positions within the Virgin Islands Government are exempt, and which are in the career service. The Executive branch, by devising its own classification system, has encroached on the power of the Legislature.

"The doctrine of separation of powers applies with respect to the coordinate branches of government in the Virgin Islands." Smith v. Magras, 124 F.3d 457, 465 (3d Cir. 1997). Thus, the public interest is served by preserving the system of checks and balances inherent in the Government of the Virgin Islands.

Each of the four factors – the likelihood of success on the merits, irreparable harm, balance of the hardships, and protection of the public interest – weighs in favor of the issuance of a preliminary injunction. Because the issue boils down to a legal one, the likelihood of success

on the merits is certain. This single factor, weighing so heavily in favor of a preliminary injunction, lessens the showing required as to the remaining factors. Cf. Constructors Ass'n of Western Pennsylvania v. Kreps, 573 F.2d 811, 815 (3d Cir. 1978) (reasoning that greater significance is placed on likelihood of success when irreparable harm is limited and balance of harms and protection of public interest do not strongly favor injunctive relief).

The issuance of a preliminary injunction will halt the irreparable injury that Iles and Gerard are currently experiencing, will alleviate their hardship without unduly burdening Governor de Jongh or the Government of the Virgin Islands, and will protect the public interest in the protection of constitutional rights and in maintaining the separation of powers among the branches of government. Thus, the Court finds that both Iles and Gerard have met their burden of demonstrating that a preliminary injunction is warranted.

**III.    Posting of a Bond**

The Third Circuit has acknowledged on several occasions that there are instances in which a district court may grant a preliminary injunction without requiring the posting of a bond. Temple University v. White, 941 F.2d 20, 219 (3d Cir. 1991). In Temple University v. White, the Third Circuit adopted the factors applied in the First Circuit's decision, Crowley v. Local No. 82, 679 F.2d 978, 1000 (1st Cir. 1982). Id. "First, at least in noncommercial cases, the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant." Id. (quoting Crowley, 679 F.2d at 1000) "Second, in order not to restrict a federal right unduly, the impact that a bond requirement would have on the enforcement of the right should also be considered." Crowley, 679 F.2d at 1000.

Reinstating Iles and Gerard, two long-term public employees, and providing them with back pay, would not impose an undue hardship on Governor de Jongh. However, it is extremely unlikely that Iles or Gerard have the financial ability to post a bond. Requiring them to post a bond would force them to forego pursuing enforcement of their constitutional right to due process, at least at this preliminary injunction stage.

"Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right." Complete Angler, LLC v. City of Clearwater, Fla., 607 F. Supp.2d 1326, 1335 (M.D. Fla. 2009). Given this analysis of the factors endorsed in Temple University, the Court will not require that Iles or Gerard post a bond as a condition of granting a preliminary injunction.

### IV. Appropriate Relief

The Government of the Virgin Islands is not considered a "person" under § 1983. Ngiraingas v. Sanchez, 495 U.S. 182, 191-92 (1990). However, Governor de Jongh, in his official capacity, may be sued for injunctive relief. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989).

Reinstatement is a form of injunctive relief. Gurmankin v. Costanzo, 626 F.2d 1115, 1122 (3d Cir. 1980). Iles' and Gerard's "prayer for back pay is not a claim for damages, but is an integral part of the equitable remedy of injunctive reinstatement." Id. As the Third Circuit explained in Gurmankin v. Costanzo:

> Reinstatement involves a return of the plaintiffs to the positions they held before the alleged unconstitutional [action]. An inextricable part of the restoration to prior status is the payment of back wages properly owing to the plaintiffs, diminished by their earnings, if any, in the interim. Back pay is merely an element

16

of the equitable remedy of reinstatement.

Id.

Thus, this Court's preliminary injunction will issue only against Governor de Jongh in his official capacity. An award of back pay, diminished by any interim wages, will accompany reinstatement.

## V. Conclusion

Charles Iles and Claude Gerard have demonstrated that the requirements for the issuance of a preliminary injunction are met.[5] Under the circumstances presented, no bond is warranted. Therefore, the Court grants their motions for preliminary injunction as to Governor de Jongh in his official capacity. An appropriate Order accompanies this Memorandum Opinion.

ENTER:

DATE: November 24, 2009 _____/s/_____
RAYMOND L. FINCH
SENIOR DISTRICT JUDGE

---

[5] Because Iles and Gerard's claim that their Fourteenth Amendment rights were violated is sufficient to warrant the imposition of a preliminary injunction, the Court need not reach their First Amendment claims at this time. Cf. Circle Schools v. Pappert, 381 F.3d 172, 183 (3d Cir. 2004) (declining to reach Fourteenth Amendment claim after finding that plaintiffs had prevailed on their First Amendment claim).